17-0516 Maria Brummel v. Richard Grossman, F.L.A. Good morning. Can the attorneys present at the podium identify yourselves for the record, please? Julie Boynton on behalf of Pellant. Good morning, Ms. Boynton. How are you? Fine, thank you. Good morning. Jim Simpson. I represent the FLE's Richard Grossman, Agnes Grossman, and their law firm, the law firm of Richard Grossman. Good morning, Ms. Morrison. David Maxey on behalf of the Daniels Defendants. Okay. Mr. Simpson and Maxey, how did you want to divide your time? I'm going to be doing the argument. You just get to sit and watch, critique that. Yeah. All right, great. Mr. Simpson, 15 minutes. Ms. Boynton, did you want to save some time for rebuttal? Five. Five minutes, so 10 minutes in your initial argument, five for rebuttal. Great. Thank you. Thank you. Ms. Boynton, you can proceed. May it please the Court, we're here today because in the underlying case we have defendant attorneys who failed to conduct discovery, who failed to answer requests to admit, and failed to respond to a summary judgment motion in the underlying case, causing Mr. Breville's whistleblower and retaliatory discharge case to be denied judgment. You have to show that you would win the underlying case. We certainly do. All right, well, show us how. Well, I think in this case, I first want to raise, which I don't know if I raised clearly enough in my briefs, but many of the arguments that have been made in this case, judicial estoppel, labor relations act, the whistleblower act, start date, were not defenses that were raised in the underlying case. The sole reason that the underlying case was lost is because my court said we had a valid reason for terminating Mr. Breville. Well, didn't Mr. Breville say that in his deposition, that he was incapable of working and he couldn't come back to work? No, he didn't say that. He said, I'm incapable of going back to the job I had. There is work at NICOR, which I could do, and under the union contract, they had an obligation for a long-term employee who had been a faithful employee to temporarily work. He said he could not work at all. No, he did not say that. He said there is work. In fact, he enlisted a number of jobs and enlisted them in the brief that he said he could do. He could have done the union position, the supervisory position he was given. So did he bring a union complaint on that against NICOR saying that under my union contract, you have an obligation to give me one of these alternative positions? The union would not bring an action on his behalf. Based on? Whatever reasons they had. You know, Mr. Brummel had created a lot of issues for NICOR, and he's not a person who's done a favor because he reported this to entities, governmental entities, and nobody was really helping him. That was the problem. Nobody would help him. So, but now you're left with he was incapable of doing his current job. There was no other employment offered to him, but he was discharged. How are you showing that he was discharged for the activities, the reporting to OSHA or whatever else? Because for 25 years he's been a stellar employee, he had an outpack of ways. As soon as he reported to the governmental entities this problem with the water, the toxic work environment, NICOR engaged in escalating events to try to, first they tried to get him to quit. Instead of having one quarter re-inspection, they gave him 28 inspections. In one month they came out, took pictures of his work site. They started writing him up for activities he had never been written up before. They did everything they could to try to get him to quit his job. When he quit his job, they impeded his ability to get medical assistance. He would go to the doctors. He'd say this was caused by my exposure to toxins at work. And if you look at the notes of the nurse, she was refusing to authorize the work, even though he was going in and saying he was, so the doctors wouldn't treat him, because he was saying it was work-related. And NICOR was saying we're not authorizing because it's not work-related. He couldn't get medical documentation. They were saying, well, you didn't give us the medical documentation. He did provide a proof of claim from his doctor in that January. And NICOR repeatedly told him that he was not using the correct form that they needed. Is that right? No, that's not right. In fact, the problem was what NICOR wanted is they wanted him to see a doctor again and get another proof of claim. They never told him that. It's really important. I hope when you look at the letters that they were sending him, they're sending him, we need to get your, we need an updated information. First he's having his doctor fax it to him. He's bringing it in to him. He's sending it to him by certified mail. Not once in those letters does it say, no, we received the proof of claim, which Gene Somalis of NICOR said was sufficient to meet the criteria for what they needed to prove his eligibility for continued work. But they would just say, we didn't get it. We didn't get it. So here's the poor guy. Come again. Here it is. Here it is. Here it is. They keep sending letters. We're not getting it. We don't have your information. Let me just stop you for a minute. Yeah. What happened here was he sent in the correct medical. Correct. But then they wanted a current medical, which they're entitled to. And they gave him two or three opportunities to obtain current medical, but he wasn't even seeing a doctor during that period of time. So he could never have given them current medical because when they took his deposition, he testified he wasn't even under medical care at that time. He wasn't seeing anybody. But he tried to see somebody, but NICOR was blocking him from seeing people. You know, he could have seen the same doctor that he was seeing and brought it up to date. They would not help. They would not see him because he was saying it was work-related. So he would go to the doctors. He would say, this is a work injury. They'd say, you have to go to a workman's cop. He was caught in a bind. He tried to go to the University of Illinois to see Dr. Catherine Duvall, who's a real woman. He could have seen a doctor anywhere to get current medical. That's the problem. Well, that's the problem except they never told him, we need you to see the doctor again and we need to have a different. Well, they asked for a current medical and he never sent them the current medical. But he did because the first time they sent a letter is in December. In January, he gets the POC to them. And then they keep saying for the next couple of months, we don't get your updated information. He's having the doctor refax it to him. He's bringing it in because they never tell him. But that wasn't current. But they did. You're right. He did refax that same thing again. But what Justice Gordon is saying is, what good is it doing him when they said, we don't want that, we need your current medical. That's the thing. They never said, we don't want that one. And I want you to notice, NACOR is very sophisticated. Seaforth and Shaw is their counsel. They know what they have to do to avoid a pretext filing. So they're very carefully written. And, you know, Jean Somalis admitted she never talked to him, never told him what the problem with the POC was, never explained any of this to him. He thinks he's doing everything he can to comply because he's thinking they don't have the January one. And if you look at those letters, they were very careful. Not to once inform him of what it was. Because they wanted to fire him. They wanted to have a reason to fire him. So they just kept saying, we didn't get your updated information. He's thinking, I gave it to you in January. Here it is, here it is, here it is. And they don't tell him. No, that's not what we want. We want you to go to your doctor again and get a new one. Well, isn't an update, isn't that what that means? Well, that's what they asked for in December and in January. And that's what he provided them. So they're continuing to send the same letter. But why don't they tell him that? Why don't they say, look, we have the January one. This isn't sufficient. Because they don't want him to be able to comply. Not only don't they want him to, they're trying to impede his ability to by not allowing doctors to treat him. I think a reasonable jury put under these facts say, especially when you saw how they tried to get him fired before he got to continue work. So you're telling us that these letters were unfair. And I think it's also unfair for a 25-year employee not to be brought in and said, this is what the problem with the POC is. They never explain. Look at the letters. They never say, we have your January one. That's not what we're looking for. This is what we're looking for. They never once tell him that. It's not that he hasn't provided this updated information, which was the January one. He thought that was the updated information. They never clarify it because they want to have a reason to fire him. You know, they tried to give him, to find a work reason to fire him. He was 100% on all his inspections. They couldn't get him that way. What about his deposition? Did he say he was confused about those letters? Well, you know, we had attorneys who did prepare for deposition. We went there. We never had any follow-up questions. So there's nothing in the record that establishes he didn't know about the inadequacy of his repeatedly filing the same medical report? No, I think there is in the record evidence to establish that, how he talked about how I continued to try to submit the information to him, and they kept saying we don't get it. How he then, you know, Well, didn't he say in his deposition that he wasn't under the care of any doctors, so he couldn't submit an update? Isn't that what he said? No, he didn't say that. No? I thought there was something in the record where he said he was too sick. He was trying to get them the information that he wanted, but there were days when he was too sick. He wasn't a malingerer, obviously, because he's dead now from this. But I think there's enough there, at least to raise a question of that. But the jury was, was the company being straightforward, not as ordered in looking for a reason after all these other things they did to him didn't work to say this is the reason that we have a legitimate reason to fire him? If they had come back once and said, you know, you need to have some doctors see you now and update that 119 report, I think we wouldn't be standing here today. But they never did that. They kept leading him to believe they didn't receive the January report. I think this is my 10 minutes. Okay. Thank you, Ms. Boyden. Mr. Simpson? Thank you. Good morning. May it please the Court. Justice Gordon asked Ms. Boyden the question, don't you have to prove that you'll win the underlying case? And that's the question in this case. And the question is, how do you answer that question?   She's not an attorney. She's not a lawyer. I'm not an attorney because the fact of the matter is that the underlying whistleblower case and retaliatory discharge case that Mr. Brummel filed is unwinnable. And it's unwinnable by the simple fact that this case begins and it ends with three sets of admissions, sworn admissions, that Mr. Brummel made before the Social Security Administration, before the Workers' Compensation Commission, and even in the deposition he gave, the sworn testimony he gave in the underlying case itself. Mr. Brummel admitted three times that he was completely disabled and unable to work in any job. And that is in the record. And as Justice Burke asked, that is in his deposition. And it's in the record. It's at pages 442 of the record, the 2016 record, 476 through 479, 486 through 487. It's also in the Social Security Administration documents that he submitted and he filed it in the decision that the Social Security Administration gave. It's in the Workers' Compensation lump sum settlement agreement that Mr. Brummel signed. The other issue is that Mr. Brummel did not provide medical documentation to support. Counsel, in each of those situations, the plaintiff said he could not work in any job at NYCORP? Correct. Correct. Now, he was asked in his deposition in 2013, he was asked whether you could work somewhere else or do another job, and what he said is, I'd like to try. But the problem with that is we're talking about in 2013. The relevant time period for analyzing a retaliatory discharge case is at the time he was discharged and whether he could work in any job. And Mr. Brummel, to quote his words, said he was on the ground sick. He couldn't do any job. At least through 2007, 2008. And when he applied for Social Security benefits, he said he couldn't work in any capacity whatsoever, that he was completely disabled. And that's what the Social Security Administration found. And incidentally, my client, Mr. Grossman, and Mr. Maxey's client, didn't even represent Mr. Brummel back at the time. In a legal mental practice case, you have to prove a case within a case. In the Supreme Court. And Grossman's were a little bit deficient on this. You're going to agree with me on that one, I assume. I'm sorry? The Grossman's were deficient. Their legal representation was deficient on this. Well, we're getting a little outside the record, and Mr. Grossman probably admittedly could have done some things here. There's some criticisms about not answering requests to admit. However, I would point out that the requests to admit were issued, and the deposition that he gave where he made all these admissions were made in the interim, before the requests to admit were due. So there's not much he could have said to counteract the deposition. All right. Sanctions get imposed for failure to produce documents. The request to admit, no discovery was ever served on night court. And there's no response to a summary judgment motion. You really can't tell me that that is sufficient legal representation. Look, I would agree that there are things that should have been done, but I will also say that that doesn't give the plaintiff a viable cause of action for legal malpractice. If the case is unwinnable, it doesn't matter. I mean, he didn't even show up for the summary judgment hearing. True, but we never got there in the underlying case. We never got there in the legal malpractice case into discovery. The testimony, and, again, I'm getting far afield from the record that would come out, is that Mr. Brummel fired Mr. Grossman, and Mr. Grossman was not the attorney of record. Now, I would concede that he should have filed a motion to withdraw. There probably should have been more documentation to that effect. But the complete story is not in the record as to what happened between Mr. Brummel and Mr. Grossman during the representation. And, again, what I come back to in this case and what Judge Callahan ruled in the circuit court is that we don't need to get there. And the reason we don't need to get there is because the case was indeed unwinnable. As the Supreme Court has said, where the alleged malpractice involves litigation, no actionable claim exists unless the attorney's negligence resulted in the loss of an underlying cause of action. And here, it's Mr. Brummel's admissions that resulted in the loss of the underlying cause of action. It's not anything that Mr. Grossman could have done to save that claim. Is Mr. Grossman still practicing law? He is, as far as I understand, yes. That is the Triagee versus Bossman and Weaver case that I just cited to you. And the retaliatory discharge in elements in Illinois require that you prove causation. Both common law tort of retaliatory discharge and the Illinois Whistleblower Act require the plaintiff to show a causal relationship between the discharge and the whistleblowing activity. And Illinois law, as was pointed out when Ms. Boynton was arguing, requires an affirmative showing on the part of the plaintiff that the protected activity was the cause of the employer's decision to fire the employee. And the element of causation is not met if the employer establishes that he has a valid non-credential basis for discharging the employee. And in this case, so a company has contaminated water that gets an employee sick, and if he has the gall to call attention to that, they can fire him for that and get away with it if they got him sick enough that he can't return to work. Is that about how this is playing out? Well, there's always a remedy in workers' compensation, and there's always a remedy for his personal injuries. What we're talking about here is a retaliatory discharge case, and we're talking about a whistleblower case where the ability to work becomes relevant. And so what the law says on that is that Illinois law does not require an employer to retain an at-will employee who is medically unable to work and return to his designated position. And in this case, that's precisely what the admissions bear out. That doesn't leave Mr. Brummel without a remedy. He was sick. He had personal injuries. He may have had tort claims against NICOR for his own personal injuries. He filed a workers' compensation claim and received a settlement. However, those are not matters in which my client, Mr. Grossman, was retained to represent him, and so we're limited here to talking about his remedies for retaliatory discharge and whistleblowing. We mentioned judicial estoppel. Judicial estoppel. So let me ask you this. So when somebody gets sick on a job, they can usually take a leave of some kind. If you discharge them, does that take away their leave? When you discharge them, then you're done. You stop paying them at that moment, right? That's correct. If Mr. Brummel had, in fact, been discharged and not be given an opportunity for a leave of absence, that that would have taken away his leave because he would no longer have been an employee. He did go on leave. But the plaintiff is saying he was discharged because he was a whistleblower. But he still went on leave prior to the time he was discharged. Right. What happened in this case is that Mr. Brummel went on a leave of absence for a number of months, and he didn't provide current medical documentation to support that leave of absence. No, I know that's the error. And continue it. And there was a comment made by Ms. Boynton that NICOR never told Mr. Brummel that the documentation was insufficient. That's just simply inaccurate. On April 2, 2004, Ms. Simoleos wrote to Mr. Brummel and explained that the documentation that Mr. Brummel had recently provided and the information was from October of last year and that NICOR needed updated medical information. And if NICOR did not receive that updated medical information, then the employment would be terminated. And Mr. Brummel never heeded that warning, never went to a doctor, never submitted a different proof of claim that showed what the status of his medical condition was. And there's a lot of talk in this case about a collective bargaining agreement and whether there were rights under the collective bargaining agreement to be put in a different position. Well, Mr. Brummel never gave NICOR a chance to do that. He never gave any medical information or any indication that he could work to NICOR. Never gave them anything where they could have tried to accommodate him or put him in another position. And so at the end of the day, the collective bargaining agreement really does not become relevant in this case. And I would add that the collective bargaining agreement in this case is an agreement that would have required a claim to be filed under arbitration within 15 days after termination if you wanted to pursue those rights and there's no evidence in the record that Mr. Grossman was ever hired to pursue collective bargaining rights or that he was even an attorney that was assisting Mr. Brummel during that time. The principles of judicial estoppel also apply to the Social Security Administration documents and the workers' compensation lump sum settlement agreement that were signed in this case by Mr. Brummel. Even if Mr. Brummel had not testified in his deposition as he did and reaffirmed and admitted that he was on the ground sick and couldn't work, those admissions would have prohibited him from so testifying. So Mr. Brummel in his deposition was consistent with what he said in the Social Security Administration and in the Workers' Compensation Commission. And those two admissions barred his claim in this lawsuit because, again, it foreclosed his ability to show that he could return to work and that is an element under retaliatory discharge and under the Illinois Whistleblower Act that he was required to prove in his underlying employment case. I want to mention briefly the fact that there's been some arguments by the appellant about discovery and that more discovery should have been allowed in this case. Rule 191 affidavit was provided in opposition to the summary judgment. The affidavit asked to depose 32 witnesses. The affidavit was deficient in that it failed to state that the witnesses that the plaintiffs sought to depose were the only persons with knowledge of material facts necessary to respond to the motion for summary judgment. And that deficiency is important because it gets us back to our original point. The only person whose statements were relevant were Mr. Brummel's. Our motion for summary judgment was based on Mr. Brummel's statements, his own admissions. No witness in the world could come in and undo what Mr. Brummel said. And so for that reason, the court properly exercised its discretion in limiting the amount of depositions that Ms. Poynton could take. And in fact, I believe, was generous in allowing her to go depose a NICOR employee. And that NICOR employee did not give any support to the claim. She affirmed over and over in her deposition that Mr. Brummel was terminated because he did not provide updated medical information and was repeatedly asked to provide current information. And when he didn't do so, NICOR had no choice but to terminate his employment. For all of those reasons, we believe that the circuit court's decision on summary judgment is correct. And on behalf of Mr. Grossman, his law firm, Agnes Grossman, and the co-defendants, the Daniels firm, and Mr. Daniels, we would ask that the court affirm that decision. Thank you, Mr. Siption. Ms. Poynton. Mr. Siption just argued that the April 2nd letter to Mr. Brummel said, we haven't received an update since October. That is exactly what I'm saying. They're still not acknowledging the January document. It's clear to see why Mr. Brummel was confused. Because they were intentionally confusing him. And that was to create this pretext he wasn't updating and seeing a new doctor. With respect to the claim, and one more thing on that, the plaintiff can meet their burden of proof by showing that the employer's pro-offer explanation is unworthy of belief. I think there's factual questions as to whether a jury, given the course of conduct of NICOR, and the letters which were sent, and the fact that they never communicated with him, never told him what the problem with the POC he had offered was, that a jury could reasonably find. They weren't interested in determining whether he had medical evidence to support his claim. They were interested in firing him. In fact, I think the most crucial evidence is, geez, I didn't ever even see the POC. Here's the person firing him. Never even saw it to see if it was accurate. That's certainly evidence which a jury could take into consideration to find, that wasn't the reason that he was terminated. It wasn't even significant enough to look at. They wanted him out. That's why he was terminated. With respect to the positions on Social Security, a Social Security claim can be awarded if a person is substantially, cannot be engaged in any substantial gainful activity. Now, if you look at, and I quoted in the brief, the Social Security decision, the Social Security Department did not say Mr. Bummel couldn't work, but they said there was such a limited scope of activity and work that he could do, that he was considered disabled under the Social Security Act. Therefore, and the jobs he was requesting that NICOR provided were within that scope of limited activity, where he could sit and supervise people in doing work that he had done for 25 years. So I don't think that the Social Security, the position between Social Security and workman's comp should be a judicial bar, especially when judicial establishment is an equitable decision, and equity denotes a spirit of fairness, justice, and right. Under these circumstances, given the fact they put him in this horrible position where the limited scope of work he could do, he couldn't find that work to support his family, even though he was entitled to a NICOR and there was work available, he could do that. To hold that against him and say he can't recover for essentially being poisoned to death by work conditions would just be so grossly unfair, it shouldn't be imposed, even if it would be applicable. Let me ask you this, in the lower court, did you bring out the fact that he could have worked in another position? We did. It's a non-reliant brief sentence in this briefing. He listed the positions he could do. He listed the new man position. He listed other more sedentary work that he could do. He was never offered those positions. They never came to him and said, they have contractual obligations. They never exercised that contract in good faith. I think when you look at the course of conduct, a reasonable jury could find that NICOR wasn't acting in good faith, that they had one motivation, is to find a reason to terminate Rommel. Either because he wasn't performing his job correctly, they can't do that, so they created other reasons to do it. And I really ask that you look at those letters because he's never given notice that what you're submitting to us isn't the information we need. Never once. For them to fire him and say, you're not giving us the information you need, when he gave them information, which says he's no longer, you know, he can't work right now, and will be out for at least a year period, and then for them to say, oh well, you know, we didn't get the information, and never to tell them that is certainly something a jury could find, that NICOR did not have a valid reason, and they were looking for a reason to fire him. And I also want to speak with respect to being sick on the ground. Mr. Rommel testified that there were days he was on the ground sick. He was, but not every day. Not every day. And he so wanted to go back to work. He wanted to go back to work in the worst way, and he would have done any job they gave him that he was capable of doing, and he was really deprived of that opportunity by the firing. He lost his disability benefits. He lost retirement benefits. He lost promotion benefits. He lost all kinds of things. Remember the Whistleblower Act, by the way. You don't have to have a termination. It's any adverse action taken against the employee. So I ask that you give us consideration that there are factual questions that a jury may well find that NICOR was not acting in good faith. And, in fact, the reason they gave for firing him was not the true reason, but their underlying motivation is they wanted to get rid of somebody who was rabble-roused or not on this issue of the toxic water. Thank you, Mr. Boyd. Thank you. Court, I'll take the matter under advisement and issue an order as soon as possible. We need to reshuffle our panel.